```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
DIGIZIP.COM, INC.,                                             :
                        Plaintiff,                             :      OPINION AND ORDER
                                                               :
           -v.-                                                :      14 Civ. 1741 (GWG)
                                                               :
VERIZON SERVICES CORP., VERIZON NEW
ENGLAND INC., VERIZON PENNSYLVANIA                             :
INC., VERIZON NORTH LLC and VERIZON
NEW JERSEY INC.,                                               :
                        Defendants.                            :
---------------------------------------------------------------x
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

The plaintiff in this action, Digizip.com, Inc. ("Digizip"), has brought claims for breach of contract and unjust enrichment under New York law against the defendants, which we will refer to collectively as "Verizon."  Verizon now moves to dismiss Digizip's complaint pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(6), or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56.[1]  The parties agreed to conduct all proceedings in this case before a United

---

[1] See Notice of Motion, filed June 6, 2014 (Docket # 17); Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint or, in the Alternative, for Summary Judgment, filed June 6, 2014 (Docket # 18) ("Verizon Mem."); Statement of Material Facts Pursuant to Local Rule 56.1, filed June 6, 2014 (Docket # 19); Affidavit of Jerri D. Plummer, filed June 6, 2014 (Docket # 20) ("Plummer Aff."); Declaration of Michael J. Tiffany, filed June 6, 2014 (Docket # 21); Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint or, in the Alternative, for Summary Judgment, filed July 25, 2014 (Docket # 23); Declaration of Gregory Schneider, filed July 25, 2014 (Docket # 22) ("Schneider Decl."); Digizip's Response to Defendant's Statement of Material Facts Pursuant to Rule 56.1, filed July 25, 2014 (Docket # 24); Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint or, in the Alternative, for Summary Judgment, filed Aug. 8, 2014 (Docket # 26) ("Reply Mem."); Verizon's Response to Digizip's Statement of Additional Material Facts Pursuant to Local Rule 56.1, filed Aug. 8, 2014 (Docket # 25); Letter from Michael J. Tiffany, filed Jan. 23, 2015 (Docket # 30) ("First Verizon Ltr."); Letter from Mark I. Reisman, filed Jan. 23, 2015 (Docket # 31); Letter from Michael J. Tiffany, filed Jan. 30, 2015

States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  For the reasons that follow, we conclude that Digizip assigned its claims and thus lacks standing to pursue them.  However, we will stay entry of any judgment to determine whether a nonparty, Wholesale Carrier Services, Inc. ("WCS"), seeks to ratify, join, or be substituted in as the real party in interest pursuant to Fed. R. Civ. P. 17(a)(3).

I.      BACKGROUND

Digizip entered into a series of written contracts, referred to as "Service Agreements," with each of the defendants.  See Complaint and Jury Demand, filed Mar. 13, 2014 (Docket # 2) ("Compl." or "complaint"), ¶ 2.  Under these Service Agreements, Digizip resold Verizon's telephone services to businesses in New York, New Jersey, Massachusetts, and Pennsylvania.  Id.  Digizip alleges that the parties transacted business under the Service Agreements from July 1, 2005 until December 31, 2012.  Id.

Each of the Service Agreements contained a section entitled "Tax Exemptions and Exemption Certificates."  See id. ¶¶ 28, 30, 32, 35.  This section provided that if Digizip was exempt from paying a tax and complied with the procedures to certify that exemption, Verizon would not collect that tax.  See id.  Digizip contends that it was exempt from certain surcharges and taxes, and that it provided Verizon with the necessary proof of this exempt status, but that Verizon nonetheless continued to include those surcharges and taxes on its monthly bills to Digizip from approximately September 2005 through November 2011.  Id. ¶¶ 3, 36, 39.  By Digizip's calculation, the total amount it paid to Verizon in exempt surcharges over this period was $386,451.57.  See id. ¶ 9.  Digizip first discovered these overpayments in April 2013.  Id.

---

(Docket # 32) ("Second Verizon Ltr."); Letter from Mark I. Reisman, filed Jan. 30, 2015 (Docket # 33).

¶ 39. When Digizip brought the issue to Verizon's representative, Verizon refused to credit Digizip for its past overpayment. Id. ¶¶ 40-41.

Prior to that date, however, on December 21, 2012, Digizip sold its business to WCS. See Purchase and Sale Agreement (annexed as Ex. 1 to Schneider Decl.), at 1. That sale was accomplished through a transfer of assets from Digizip to WCS. See id. § 3.01.

Digizip filed its complaint in the instant case on March 13, 2014. It seeks to recover $386,451.57 in damages for breach of contract and the same amount for unjust enrichment, plus interest, attorney's fees, court costs, and disbursements. Compl. ¶¶ 46, 50. Verizon has moved (1) to dismiss all claims for lack of standing; (2) to dismiss all claims based on a purported settlement; (3) to dismiss the unjust enrichment claim; and (4) to dismiss any claims for damages arising prior to March 13, 2008 on statute of limitations grounds. See Verizon Mem. at 6-18. Because we find that Digizip lacks standing, we do not reach any of the other arguments raised by Digizip. We conclude by discussing the application of Fed. R. Civ. P. 17(a)(3), which allows a real party in interest to ratify, join, or substitute in a lawsuit.

II.     STANDING

    A.     Rule 12(b)(1)

"It is well established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." Whitmore v. Arkansas, 495 U.S. 149, 154 (1990). Although challenges to standing have "sometimes" been brought under Fed. R. Civ. P. 12(b)(6), "the proper procedural route is a motion under Rule 12(b)(1)." Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.6 (2d Cir. 2006). In considering a Rule 12(b)(1) motion to dismiss for lack of standing, the court "may refer to evidence outside the pleadings." Makarova v. United

States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Kamen v. AT&T Co., 791 F.2d 1006, 1011 (2d Cir. 1986)).

Under Article III of the United States Constitution, federal courts may hear only "[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2, cl. 1. Thus, "[i]f plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005); accord Altman v. Bedford Cent. Sch. Dist., 245 F.3d 49, 69 (2d Cir. 2001). To satisfy the Article III standing requirement, the plaintiff must show: (1) that he or she "suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical;" (2) that there was a "causal connection between the injury and the conduct complained of;" and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations and internal quotation marks omitted). The plaintiff must support each of these elements of standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Id. at 561.

B.  Analysis

Invoking both Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56, Verizon argues that the claims at issue here are barred by a document executed prior to the sale. See Verizon Mem. at 6-11, 13-15; Reply Mem. at 7-13. See generally Consent to Assignment of Contracts from Digizip.com, Inc. ("Digizip") to Wholesale Carrier Services, Inc. ("WCS") (annexed as Ex. 1 to Plummer Aff.). Verizon argues in the alternative that the claims at issue were assigned to WCS and thus can no longer be brought by Digizip. See Verizon Mem. at 11-13, 15; Reply Mem. at

4

3-7. Digizip opposes both arguments and also argues that if it did assign the claims to WCS, WCS subsequently assigned them back to Digizip. See Digizip Mem. at 6-18. Because we find that the instant claims were assigned to WCS, we do not reach Verizon's argument that those claims were barred by the pre-sale document.

      1.      <u>Whether the Purchase and Sale Agreement Assigned the Claims at Issue</u>

Verizon argues that Digizip lacks standing to bring this case because Digizip assigned away its right to bring the claims at issue when it sold its assets to WCS by the Purchase and Sale Agreement. See Verizon Mem. at 12-13. Digizip contends that it did not assign that right to WCS. See Digizip Mem. at 8-11.

New York's statute governing the assignment of claims provides that "[a]ny claim . . . can be transferred," with certain exceptions not relevant here. See N.Y. Gen. Oblig. Law § 13-101.[2] The owner of the claim need not use a particular form of assignment. See, e.g., <u>Coastal Commercial Corp. v. Samuel Kosoff & Sons, Inc.</u>, 10 A.D.2d 372, 376 (4th Dep't 1960). However, the assignor must "manifest an intention to make the assignee the owner of the claim." <u>Advanced Magnetics, Inc. v. Bayfront Partners, Inc.</u>, 106 F.3d 11, 17 (2d Cir. 1997) (quoting <u>Cosmopolitan Trust Co. v. Leonard Watch Co.</u>, 249 Mass. 14, 19 (Mass. 1924)) (alteration and quotation marks omitted); accord <u>Spielman v. Acme Nat'l Sales Co.</u>, 169 A.D.2d 218, 222 (3d Dep't 1991) ("To effect a valid assignment . . . the parties must so intend."). "Any act or words are sufficient which show an intention to transfer all rights to the assignee . . . ."

---

   [2] We assume New York law applies to this case because both parties cite New York law in their memoranda of law and did not respond to the Court's directive, see Order dated Dec. 10, 2014 (Docket # 29), at 1 n.1, to state whether they believed any other law applied to this matter. See <u>Krumme v. WestPoint Stevens Inc.</u>, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such implied consent is sufficient to establish choice of law.") (citation and internal punctuation omitted).

Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd., 117 F. Supp. 2d 394, 399 (S.D.N.Y. 2000) (citation omitted).  Indeed, it appears that under New York law an assignment may even be made orally, see Krauss v. Cent. Ins. Co. of Balt., 40 N.Y.S.2d 736, 741 (Sup. Ct. 1943) ("[A]n assignment of a chose in action other than a negotiable instrument may be by parol."), though assignments lacking consideration must be signed and in writing, see N.Y. Gen. Oblig. Law § 5-1107.

Our task, therefore, is to determine whether Digizip and WCS expressed their intent in the Purchase and Sale Agreement that Digizip was assigning the right to sue Verizon on the claims in this case.  To answer this question, we examine the Purchase and Sale Agreement inasmuch as it is the document that Verizon contends effectuated the assignment.  See Verizon Mem. at 12.  Under New York law, "the intent of the parties governs" the interpretation of a contract.  E.g., Crane Co. v. Coltec Indus., Inc., 171 F.3d 733, 737 (2d Cir. 1999) (quoting Am. Express Bank Ltd. v. Uniroyal, Inc., 164 A.D.2d 275, 277 (1st Dep't 1990)) (quotation marks omitted).  The court must "ascertain this intent from the plain meaning of the language employed in the agreements, rather than from extrinsic evidence." Id. (quoting Tigue v. Commercial Life Ins. Co., 219 A.D.2d 820, 821 (4th Dep't 1995)) (internal quotation marks omitted).  The New York Court of Appeals has made clear that

> extrinsic evidence may not be considered unless the document itself is ambiguous . . . .  Further, extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face . . . .

S. Rd. Assocs., LLC v. Int'l Bus. Machs. Corp., 4 N.Y.3d 272, 278 (2005) (internal quotation marks and citations omitted).  Thus, if we find the contractual provisions at issue in this case to be unambiguous, New York law bars us from considering extrinsic evidence to determine the

6

meaning of those provisions.

Of course, in interpreting language in one section of a contract, the court must consider the entire contract. That is, the court must "not consider particular phrases in isolation, but rather interpret them in light of the parties' intent as manifested by the contract as a whole." Gary Fredrich Enters., LLC v. Marvel Characters, Inc., 716 F.3d 302, 313 (2d Cir. 2013) (citing JA Apparel Corp. v. Abboud, 568 F.3d 390, 397 (2d Cir. 2009)). If, on this view, the contract's language is ambiguous — meaning that its terms "suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement" — then the court may consider extrinsic evidence to ascertain the parties' intent. Id. at 313-14 (quoting Law Debenture Trust Co. of N.Y. v. Maverik Tube Corp., 595 F.3d 458, 466 (2d Cir. 2010)) (quotation marks omitted).

The Purchase and Sale Agreement provides that "[s]ubject to the terms and conditions herein set forth, on the Closing Date, Seller shall sell, convey, transfer, assign, and deliver to Purchaser, and Purchaser shall purchase, acquire, and accept from Seller all of the right, title, and interest of Seller in and to the Acquired Assets." Purchase and Sale Agreement § 3.01(a). The phrase "Acquired Assets" is defined as:

> Assigned Contracts, Company Assets, Equipment and Machinery, Files and Records, Intangible Assets, Intellectual Property, Licenses and Permits, Prepaid Expenses, Warranties and all other assets of Seller as of the Closing Date . . . of every kind, nature, character, and description, whether real, personal or mixed, whether accrued, contingent or other, and wherever situated, and whether or not reflected in any financial statement of Seller.

Id. at art. II., p. 2.

The issue here is whether Digizip's claims to recoup the alleged overpayments from Verizon were in fact an "Acquired Asset" of Digizip as of the closing date within the meaning of

7

this clause. Certainly, there is unrefuted evidence that the overpayments at issue were unknown to Digizip at the time of the asset sale. See Schneider Decl. ¶ 14. However, given the broadness of the definition of the assets that were acquired by WCS, with its reference to the sale of "all" assets of Digizip, its inclusion of assets "of every kind, nature, character and description," and its inclusion of assets that are "accrued, contingent or other," we do not see a basis for finding that even a right to sue that was unknown to Digizip was not included in this definition. Indeed, Digizip's briefs contain no argument at all that this definition, when read in isolation and without reference to any extrinsic evidence, fails to transfer Digizip's claims against Verizon here. Thus, we conclude that the text of this definition reflects the intent of the parties to effectuate the assignment of all claims that might arise under the Service Agreements, including those that were unknown to the parties at that time. Cf. Amusement Indus. v. Stern, 2011 WL 6811018, at *4-5 (S.D.N.Y. Dec. 28, 2011) (assignment of "all of [seller's] right, title, and interest under the Contract" included any right to sue under the contract) (citations omitted).

While Digizip offers no argument that the definition of "Acquired Assets" itself excludes claims arising out of the assigned contracts, it points to two other provisions of the Purchase and Sale Agreement that it contends give a different meaning to the definition of "Acquired Assets," or that at least render it ambiguous. See Digizip Mem. at 8-10. One provision is § 11.05 of the Purchase and Sale Agreement. See id. at 9-10. That section is entitled "Purchaser Appointed as Attorney for the Seller" and reads, in relevant part:

> Seller [Digizip] hereby constitutes and appoints the Purchaser [WCS]. . . in the name of either the Purchaser or the Seller (as the Purchaser shall determine in its sole discretion) but for the benefit and at the expense of the Purchaser (except as otherwise herein provided), . . . to institute and prosecute all proceedings which the Purchaser may deem proper in order to collect, assert or enforce any claim, right or title of any kind in or to the Acquired Assets as provided for in this Agreement. . . . Seller acknowledges that the foregoing powers are coupled with

>an interest and shall be irrevocable. The Purchaser shall be entitled to retain for its own account any amounts payable as interest respect thereof.

Purchase and Sale Agreement § 11.05. Digizip points to the phrases "for the benefit and at the expense of the Purchaser" and "all proceedings which the Purchaser may deem proper" to support its argument that § 11.05 allows it to pursue the claims here. See Digizip Mem. at 9-10. It argues that § 11.05 means that Digizip has assigned to WCS only those claims that WCS chooses to pursue or deems proper and that all other claims are left to Digizip. See Digizip Mem. at 10. Because there is no evidence that WCS has chosen to pursue these claims and, indeed, there is evidence to the contrary, see Ex. 4 to Schneider Decl. at 1-2 (email from Chris S. Barton dated May 17, 2013), Digizip argues that the claims here have not been assigned to WCS, see Digizip Mem. at 10.

This proposed interpretation of § 11.05 is unpersuasive. Section 11.05 cannot be reasonably read to function as a limitation on the scope of the broad definition of "Acquired Assets." Instead, it can only be understood as a provision in which Digizip agrees to designate WCS as the entity that is entitled to pursue any claims (or to defend claims, as is made clear in an unquoted portion of the section) that relate to the Acquired Assets. The phrase "sole discretion" merely makes clear that WCS has "sole discretion" to decide whether to pursue those claims in its own name or in Digizip's name. As for the phrase "that the Purchaser may deem proper," this too cannot be read to limit the scope of the "Acquired Assets" that WCS acquired. Instead, it clarifies that WCS has sole discretion to pick and choose among which claims to bring and, by extension, which claims it may choose to pursue in Digizip's or its own name. In other words, this phrase makes clear that Digizip has no say in any decisions WCS may make as to which claims it will bring. The phrase cannot reasonably be read to mean that if WCS chooses

not to bring a claim in Digizip's or WCS's own name, WCS's ownership of the claim is suddenly divested. To the contrary, it is obvious that § 11.05 was intended to make clear that WCS has the right to bring any proceedings to lay claim to assets it acquired, has the unilateral the right to decide whether to bring any of those claims, and has the right to name Digizip as a plaintiff in such a claim if it chooses to do so. It also makes clear that if it chooses to name Digizip as the plaintiff, WCS is entitled to keep any amount that it collects. We thus reject Digizip's argument, see Digizip Mem. at 4-5, 10, that this section amounts to an unstated reversion of assets to Digizip in instances where WCS chooses not to pursue a claim that was otherwise conveyed to it.

Second, Digizip points to § 6.23 of the Purchase and Sale Agreement as shedding light on the definition of "Acquired Assets." See Digizip Mem. at 9. Section 6.23 is entitled "Contracts and Commitments" and consists of a representation that "all" of certain categories of items are listed on a "Schedule 6.23." Purchase and Sale Agreement § 6.23. Included among these categories are "contracts, agreements, and commitments not disclosed on any other Schedule to this Agreement and which involve or may involve the payment or receipt by Seller . . . of more than $10,000 per year or $50,000 over the initial term thereof, or are otherwise material to the Business." Id. § 6.23(g). Digizip points to the fact that its claims against Verizon in this case were not included on Schedule 6.23 and argues that this shows that the parties did not intend for Digizip to assign to WCS the right to sue Verizon on the claims. See Digizip Mem. at 9. But, once again, this section cannot reasonably be read as a limitation on the scope of the definition of Acquired Assets. Instead, it simply contemplates that the parties will list all "contracts," "agreements," "commitments," and similar items to which Digizip is a party. Purchase and Sale Agreement § 6.23. Digizip makes no argument that the contracts with

Verizon that form the basis of the instant claims were not transferred as part of the Purchase and Sale agreement, notwithstanding any failure to list those contracts on Schedule 6.23. And, of course, the specific claims at issue here as to the tax withholdings were completely unknown to the parties at the time of the closing and thus could not possibly have been included on any list made at that time. In sum, § 6.23 sheds no light on the parties' intent to transfer a right to bring suit for claims, whether known or unknown, arising under the assigned contracts.

To show that the parties to the Purchase and Sale Agreement did not intend that Digizip would assign to WCS the right to sue on the claims here, Digizip has submitted a series of emails between its general manager, Greg Schneider; WCS's President/CEO, Chris Barton; and a WCS employee named Juanita Chajin. See Schneider Decl. ¶ 16; Ex. 4 to Schneider Decl. Digizip contends, not without justification, that these emails show that WCS did not believe it had been assigned the right to sue Verizon for the claims being brought here. See Digizip Mem. at 10-11. Having found no ambiguity in the Purchase and Sale agreement, however, this Court has no power to consider extrinsic evidence to vary the meaning of the agreement. See, e.g., S. Rd. Assocs., LLC, 4 N.Y.3d at 278 ("[E]xtrinsic evidence may not be considered unless the document itself is ambiguous.") (citation omitted). Thus, we cannot consider the extrinsic evidence on this point proffered by Digizip and conclude that the language of the Purchase and Sale agreement effectuated an assignment to WCS of any claims under the Service Agreements.

    2.  <u>Whether WCS Assigned the Claims to Digizip</u>

Digizip argues that even if it assigned the instant claims against Verizon to WCS as part of the Purchase and Sale Agreement, WCS subsequently assigned the claims back to Digizip, as reflected in an email from Barton to Schneider and Chajin. See Digizip Mem. at 11. In this email, Barton writes that "[t]he taxes that Digizip represents as overcharged and exempted by

previous submission to your Verizon Wholesale team is a pre-closing dispute." Ex. 4 to Schneider Decl. at 2. Barton further states that "WCS is under no obligation to assist in the pursuit of taxes or surcharges credits recovery prior to 12/20/2012 closing date" and that Digizip "will pursue this independent of WCS," and he instructs Chajin "Do NOT engage Verizon on this recovery prior to December 20, 2012 charges." Id. at 1. Barton goes on to advise Schneider to "[c]ontact a tax/telecom attorney to discuss your rights in this matter" and to "expect a lengthy battle and a guaranteed audit that will span a minimum of three years which will require legal representation if you expect to succeed." Id. at 2.

Verizon disputes that the email from Barton satisfies the requirements of an assignment first on the ground that "[a]s Digizip admits, rights under the Service Agreements cannot be assigned without Verizon's consent." Reply Mem. at 5-6 (citing Schneider Decl. ¶ 7). The cited statement by Digizip, however, referred only to the fact that assignment of the particular Service Agreements at issue required Verizon's consent. See Schneider Decl. ¶ 7. There is no admission by Digizip that the assignment of a claim by WCS back to Digizip required Verizon's consent.[3]

Verizon next argues that the assignment was invalid because "WCS does not state it is transferring ownership of the claims, but rather merely recognizes that Digizip is pursuing

---

[3] In a letter sent to the Court after the initial briefing, Verizon relies on other evidence to make this argument. See Second Verizon Ltr. at 5-6. It also attaches an actual Service Agreement and points to an anti-assignment clause in that agreement. See id. at 5; Ex. A to Second Verizon Ltr. We do not reach these arguments now, however, because Verizon did not make them in the initial briefing but instead made them in a letter to which Digizip had no opportunity to respond (and following from the Court's invitation to address an entirely different issue, see Order, dated Dec. 10, 2014 (Docket # 29), at 2). Our ruling today is without prejudice to Verizon's making this same argument in another motion in the event the issue was ever raised again.

claims against Verizon 'independent of WCS' and advises Digizip to get an attorney to advise it." Reply Mem. at 6 n.6. As already noted, under New York law, an assignment need not take on any special format as long as the parties have manifested their intention to make the assignment. See, e.g., Coastal Commercial Corp., 10 A.D.2d at 376. Nonetheless, inherent in the concept of an "assignment" is the transfer of some right or property from the assignor to the assignee. See Black's Law Dictionary 142 (10th ed. 2014) ("assignment" means "[t]he transfer of rights or property"). Indeed, this point is conclusively established by New York's statute on assignment, which uses the terminology of "transferred" claims. N.Y. Gen. Oblig. Law § 13-101; see also id. § 13-109 ("[T]he term 'transfer' includes . . . assignment . . . ."). Cases invoking New York's law of assignment, including the case cited by Digizip, invariably involve one party conveying or transferring a right or property to another party. See, e.g., Cavendish Traders, Ltd., 117 F. Supp. 2d at 399 (noting that an act or words that assign a claim must "show an intention to transfer all rights to the assignee") (citation omitted). The email relied on by Digizip to constitute the assignment, by contrast, merely reflects that WCS recognized that Digizip was pursuing the claims at issue in this case, recognized that the claims belonged to Digizip, and expressed no disagreement with Digizip's bringing the claims. See Ex. 4 to Schneider Decl. at 1-2. What is lacking is any indication that WCS was agreeing in the email to transfer a right from WCS to Digizip. Instead, WCS seemed to believe that the claims belonged to Digizip all along. Because of the lack of any indication in the documents that there was a "transfer" of a claim, we cannot view the emails as constituting an assignment of the instant claims from WCS to Digizip under the requirements of New York law.

"An unequivocal and complete assignment extinguishes the assignor's rights against the obligor and leaves the assignor without standing to sue the obligor." Aaron Ferer & Sons Ltd. v.

13

Chase Manhattan Bank, Nat'l Ass'n, 731 F.2d 112, 125 (2d Cir. 1984); accord Amusement Industry, Inc. v. Stern, 2011 WL 6811018, at * 4 (S.D.N.Y. Dec. 28, 2011).  Accordingly, Digizip's claims must be dismissed for lack of standing.

III.    RULE 17

Fed. R. Civ. P. 17(a)(1) provides that "[a]n action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(3) further provides that

> [t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action.  After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

In a case where the plaintiff was deemed to lack standing to pursue claims because the assignment of the claims to the plaintiff was defective, the Second Circuit has held that Fed. R. Civ. P. 17 requires the district court to stay the action to allow the procedures in Rule 17(a)(3) to be used.  See Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 19-21 (2d Cir. 1997).

Verizon argues that the Court should not take this course because Digizip lacks standing and, notwithstanding the ruling in Advanced Magnetics, Inc., "a Rule 17(a)(3) ratification cannot cure a constitutional standing defect." First Verizon Ltr. at 5.  It also argues that WCS cannot "ratify[] and transfer[] the claims back to Digizip" without Verizon's consent. Id. at 5 n.4.  We do not reach these arguments, however, because it would be premature to do so in the absence of an effort by WCS to take advantage of Rule 17(a)(3) to ratify, join, or substitute itself into this action.  If one of these actions is taken, Verizon will be free to raise these arguments in an

14

appropriate motion.[4]

IV. CONCLUSION

For the foregoing reasons, Verizon's motion to dismiss for lack of standing (Docket # 17) is granted. No judgment shall be entered at this time, however, because the Court hereby allows a period of 60 days for nonparty Wholesale Carrier Services, Inc. to ratify, join, or be substituted in as the real party in interest pursuant to Fed. R. Civ. P. 17(a)(3). If this does not occur within 60 days, the Clerk will be directed to enter judgment dismissing this case.

Dated: March 20, 2015
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[4] It appears that courts in this circuit have disagreed as to whether Rule 17(a)(3) may be used to cure an alleged standing defect. Some hold that Rule 17(a)(3) may be used to overcome such a defect. See, e.g., Park B. Smith, Inc. v. CHF Indus. Inc., 811 F. Supp. 2d 766, 773 (S.D.N.Y. 2011); In re Vivendi Universal, S.A. Securities Litigation, 605 F. Supp. 2d 570, 583-85 (S.D.N.Y. 2009); Wells Fargo Nw. Bank, Nat'l Ass'n v. Varig-S.A., 2003 WL 21508341, at *3 (S.D.N.Y. June 27, 2003), aff'd, 108 F. App'x 6 (2d Cir. 2004); Gusto Records, Inc. v. Artists Rights Enforcement Corp., 1992 WL 26746, at *3 (S.D.N.Y. Feb. 4, 1992). Some cases hold otherwise on the theory that subject matter jurisdiction must be judged exclusively at the time the complaint was filed. See, e.g., Sharehold Rep. Servs., LLC v. Sandoz, Inc., 2013 WL 4015901, at *7-8 (S.D.N.Y. Aug. 7, 2013); Clarex Ltd. V. Natixis Secs. Am. LLC, 2012 WL 4849146, at *7-8 (S.D.N.Y. Oct. 12, 2012). In the event this question is briefed in this case, the parties should be prepared to address whether these latter cases are in tension with a line of cases that allow the dismissal of non-diverse defendants to cure a lack of diversity (and, therefore, a lack of subject matter jurisdiction) that inhered in an action at the time of its filing. See, e.g., Hallingby v. Hallingby, 574 F.3d 51, 56 (2d Cir. 2009) (even though complete diversity was lacking at the time of removal, the district court's judgment on the merits was valid because the non-diverse defendant had been dismissed with prejudice from the action before entry of judgment).

15